UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

STEVEN V. SANN,                          )
     *Plaintiff*,                        )
                                        )
    *vs.*                                 )        1:08-cv-01182-JMS-MJD
                                        )
PATRICK F. MASTRIAN, III,                )
     *Defendant.*                        )
                                        )

## ORDER

Presently before the Court is Defendant's Motion to Strike Plaintiff's Expert Thomas J. Sponsel,  [dkt. 141], which the Court **GRANTS in part and DENIES in part** for the reasons that follow.

## I.
### BACKGROUND

In this lawsuit, Plaintiff Steven Sann alleges that Defendant Patrick Mastrian was professionally negligent as his counsel in *Landeen v. PhoneBILLit, Inc. et. al*, 519 F.Supp.2d 844 (S.D. Ind. 2007), by failing to meet an expert disclosure deadline.  [Dkt. 1 at 1-2.]   In that underlying case, Mr. Sann claimed that his former attorney Neal Lucas committed legal malpractice damaging Mr. Sann.  [*See* dkt. 142-1.]  Specifically, Mr. Sann complained, among other things, that Mr. Lucas failed to advise him that his business, PhoneBILLit, Inc., ("the Company"), could obtain S-corporation status, rather than C-corporation status.  [Dkt. 142-1 at 12 ¶¶  70-72.]   At oral argument on the pending motions, Sann's counsel further explained that Mr. Sann is also complaining that Mr. Lucas failed to include any form of shareholder dispute resolution in the corporate formation papers, a result of which was the nasty, protracted

dissolution proceeding that occurred in the *PhoneBILLit* case, resulting in the loss of the value of his shares.

As a result of Mr. Mastrian's failure to meet the expert report deadline, Mr. Sann's case against Mr. Lucas was dismissed, and the issue of damages was never reached.  *See Landeen*, 519 F.Supp.2d 844.   In the present case, Mr. Sann seeks to prove his damages in *Landeen* through the testimony of Mr. Thomas J. Sponsel, a certified public accountant, who completed a report in which he calculated the value of the Company and determined differences in tax liability under S-corporation and C-corporation statuses following an assumed sale of the Company.  [*See* dkt. 41-2.]   Mr. Mastrian now moves to strike Mr. Sponsel's testimony, arguing that the testimony should be barred under Fed. R. Evid. 702.

## II.
### DISCUSSION

The admissibility of expert testimony is governed by the framework set out in Federal Rule of Evidence 702 and *Daubert v. Merrel Dow Pharms. Inc.*, 509 U.S. 579 (1993).  *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009).   Under Rule 702, expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."   Fed. Rule Evid. 702.   "[T]o keep experts within their proper scope, lest apparently scientific testimony carry more weight with a jury than it deserves," *DePaepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998), district courts must act as gatekeepers to ensure that expert testimony is both relevant and reliable.  *Daubert*, 509 U.S. at 589.  *See also Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (holding that *Daubert*'s gatekeeping obligation "applies to all expert testimony.").

When determining relevance and reliability, district courts conduct a three-step analysis, considering whether: (1) the witness is qualified as an expert by knowledge, skill, experience,

2

training or education; (2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable; and (3) the testimony assists the trier of fact to understand the evidence or to determine a fact in issue. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). While *Daubert* provides a non-exhaustive list of factors used to determine reliability, courts have "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *Pansier*, 576 F.3d at 737 (internal citations omitted) (emphasis in original). The Court's gatekeeping inquiry is "a flexible one," *Daubert*, 509 U.S. at 594, tied to the facts of the particular case, but "[s]oundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (citing *Daubert*, 509 U.S. at 595). Accordingly, the Court's gatekeeping role is limited to determining whether expert testimony pertains to an issue in the case and whether the methodology underlying that testimony is sound. *Id.* (citing *Kumho*, 526 U.S. at 159).

## A.  Mr. Sponsel's Opinion Regarding the Value of the Company

Mr. Mastrian objects to the basis upon which Mr. Sponsel formed his valuation opinion and the relevance of his opinion on potential tax-consequence damages; he does not challenge Mr. Sponsel's qualification as an expert.[1]  Therefore, the issues before the Court regard only the other two *Daubert* factors: whether Mr. Sponsel's opinions are based on reliable methodology

---

[1] Mr. Sponsel has appeared before the Southern District of Indiana as an accounting expert before, and the Court is satisfied that his years of experience as a certified public accountant qualify him as an expert. *See* dkt. 41-1 at 46-38 (providing a list of representative cases in which Mr. Sponsel testified as an accounting expert). *See also King-Forge, Inc. v. Millennium Forge, Inc.*, 2009 U.S. Dist. LEXIS 96131, *3, n.1 (S. D. Ind. 2009) ("Mr. Sponsel has worked as a Certified Public Accountant since 1979 and has audit, accounting, and tax consulting experience in a wide variety of industries.  He has received numerous awards from the Indiana CPA Society.").

and whether they would be helpful to the trier of fact.  *Winters v. FruCon, Inc*., 498 F.3d 734, 743 (7th Cir. 2007).

In his expert report, Mr. Sponsel opines that the Company was worth $2,674,000, which he claims is a reasonable estimate of the Company's value based on the income approach, one of the three valuation methodologies generally accepted in the accounting field.  [Dkt. 41-2 at 17-18; 25.]   Mr. Mastrian contends that this opinion should be excluded as unreliable because Mr. Sponsel's expert report "is based on false assumptions." [Dkt. 142 at 5.]   Specifically, Mr. Mastrian's entire testimony is based "on the assumption that the Company had a buyer ... who would have purchased [it] for $2,674,000."  [*Id*. at 4.]  Mr. Mastrian misapprehends the basis for Mr. Sponsel's valuation of the Company.

According to Mr. Sponsel's report, [dkt. 41-2], his valuation of the Company is not based on the proceeds of an assumed sale, but rather an "income approach" to valuation.  Before discussing the valuation method he used, Mr. Sponsel describes the three generally accepted approaches to valuation: the "market," "asset" and "income" approaches.  [Dkt. 41-2 at 17.] Following a discussion of the propriety of each approach, Mr. Sponsel dismisses in turn the asset and market approaches.  [*Id*.]  Ultimately selecting the income approach as the method best suited to a valuation of the Company, Mr. Sponsel explicitly states that he did not use the market approach in his valuation calculations.  *See id* at 17 ("Without guideline company data, the market approach can not [sic] be applied.  Therefore we chose not to rely upon this approach in our final analysis.").  Under the income approach, Mr. Sponsel's valuation of the Company is based on his review of the Company's performance.  [*Id*.]  Nowhere in his valuation of the Company did Mr. Sponsel assume that the Company had a potential buyer as of the valuation

date, so the Court finds meritless Mr. Mastrian's objection to Mr. Sponsel's valuation testimony on the grounds it was "based on false assumptions." [Dkt. 142 at 5.]

By explaining the valuation approaches he considered and ultimately employed in valuing the Company, Mr. Sponsel has satisfied the Court of the reliability and relevance of his opinion. *See Metavante Corp. v. Emigrant Sav. Bank, 619 F.3d 748, 761* (7th Cir. 2010) ("[A]n expert must explain the methodologies and principles that support his or her opinion; he or she cannot simply assert a 'bottom line' or ipse dixit conclusion."). Mr. Sponsel's valuation of the Company is reliable in its methodology. It is also based on facts in evidence and relevant to the issue of the extent of damages that may have been caused by Mr. Lucas's failure to provide for a dispute resolution mechanism that may have preserved the value of the Company. The Court concludes that his expert testimony on the matter is admissible under Rule 702. Whether it is afforded any weight, is, of course another matter. *See generally*, *Landeen v. PhoneBILLit, Inc. et al*, 1:04-cv-01815-LJM-JMS (S.D. Ind.) [dkt. 441 at 6-12]. Accordingly, the Court denies Mr. Mastrian's motion to the extent it seeks to strike Mr. Sponsel's valuation of the Company.

## B. Mr. Sponsel's Opinion Regarding Tax-Impact Damages from an Assumed Sale

Per Mr. Sann's request, Mr. Sponsel's report also includes an estimate of the potential economic damage to shareholders of the Company as result of its formation as a C-corporation, rather than an S-corporation, for income tax filing purposes. [Dkt. 41-1 at 1.] To determine this difference in potential tax liability, Mr. Sponsel calculated the transactional tax consequences "assuming the Company was sold for $2,674,000." [*Id.*]

Mr. Mastrian seeks to exclude Mr. Sponsel's testimony about potential tax liability as "merely speculation, and thus, unreliable and unhelpful to a jury." [Dkt. 157 at 3.] With respect to this portion of Mr. Sponsel's testimony, Mr. Mastrian challenges neither Mr. Sponsel's

qualification as a tax expert nor his methodology in calculating tax consequences.  The only gatekeeping issue before the Court, then, is whether Mr. Sponsel's testimony regarding potential tax-liability damages from an assumed sale of the Company meets the threshold requirements of relevance.  *Winters*, 498 F.3d at 743.   It does not.

Under Rule 702, only evidence or testimony that will assist the trier of fact to understand the evidence or determine a fact in issue will be admissible at trial.  Fed. Rule Evid. 702.  In performing its relevancy inquiry, the Court considers "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (internal citation and quotation marks omitted).  Indeed, Rule 702 authorizes expert testimony only when that testimony applies the expert "principles and methods reliably to the *facts of the case.*"  Fed. Rule Evid. 702 (emphasis added.)

Here, Mr. Mastrian is correct that Mr. Sponsel's testimony regarding potential tax liability is not sufficiently tied to the facts of the case to meet the threshold requirements of Rule 702.  [Dkt. 157 at 3.]  An assumed sale in which Mr. Sann suffers imaginary damages due the Company's status as a C-corporation rather than a S-corporation does not help the trier of fact determine any fact at issue.  The Court recognizes that there are certainly circumstances in which an assumed sale would be necessary for the proper calculation of damages – for instance, if the Company's status as a C-corporation somehow inhibited a potential sale.  *See Abbott vs. Evicti Corp., et al*, 2005 U.S. Dist. LEXIS 15454 *23 (S.D. Ind. 2005) (contemplating a situation in a reconstruction of a hypothetical sale may be necessary to calculate damages).  However, the Court is unmoved that such a necessity exists here.

Mr. Sann makes no argument to support the notion that assuming a sale of the Company is necessary in order to measure the extent of his damages and the Court will not make any such

argument for him.  In a six-page response brief, Mr. Sann spends over five pages specifically discussing Mr. Sponsel's valuation testimony and the remainder arguing that the motion presently before the Court is an attack on weight rather than credibility; he never specifically mentions the necessity of assuming the Company's sale to properly measure his damages.  [*See* dkt. 154.]  The Court will understand Mr. Sann's failure to advance any argument in specific support of an assumed sale as indication that no meritorious argument exists.

Furthermore, because Mr. Sponsel's valuation of the Company was under the income approach, rather than the market approach, no tax liability adjustments need be made to the value Mr. Sponsel reached.  Therefore, tax ramifications of an imaginary sale are irrelevant to the issue of damages, and a discussion of the tax-liability differences between an S-corporation and a C-corporation would not be helpful to the trier of fact.  *See Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant, and ergo, non-helpful.") (internal citation and quotation marks omitted).

As noted, Rule 702 permits expert testimony when it is applied to the facts of the case.  Sometimes experts have to extrapolate from existing facts to opine as to damages that are reasonably likely to occur.  Here, however, not only is the purported tax liability not likely to occur, it is actually impossible for it to occur.  The Company was dissolved.  Not only was there no tax liability, the dissolution resulted in a refund from the IRS.  *Landeen v. PhoneBILLit, Inc. et al*, 1:04-cv-01815-LJM-JMS (S.D. Ind.)  [dkt. 460].

Accordingly, the Court, in its role as gatekeeper, cannot conclude that Mr. Sponsel's tax-liability testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."  *Id.*  Accordingly, the Court grants Mr. Mastrian's motion to the extent that

Mr. Sponsel's testimony concerns the tax-liability differences between the assumed sale of the Company as an S-corporation versus a C-corporation.

### III.
#### CONCLUSION

For the reasons above, the Court finds that although Mr. Sponsel's valuation testimony is admissible under Rule 702, his opinions regarding the tax-consequence damages of an assumed sale are inadmissible.   Therefore, the Court **GRANTS in part and DENIES in part** Mr. Mastrian's Motion to Strike Plaintiff's Expert Thomas J. Sponsel.  [Dkt. 141.]

01/26/12

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Brian L. England
HUNT SUEDHOFF KALAMAROS LLP
bengland@hsk-law.com

Jessica L. Greyerbiehl
HUNT SUEDHOFF KALAMAROS LLP
jgreyerbiehl@hsk-law.com

Briane M. House
NORRIS CHOPLIN & SCHROEDER LLP
bhouse@ncs-law.com

Philip Edward Kalamaros
HUNT SUEDHOFF KALAMAROS
pkalamaros@hsk-law.com

Robert Joseph Nice
THE NICE LAW FIRM
rjnice@nice-law.com

Peter A. Schroeder
NORRIS CHOPLIN & SCHROEDER LLP
pschroeder@ncs-law.com